# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| COLONY INSURANCE CO., | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No. CIV-15-538-D ) |
| CHESAPEAKE ENERGY CORP., *et al.*, | ) ) ) ) |
| Defendants. | ) |

## **O R D E R**

Before the Court are cross-motions for summary judgment filed by Plaintiff Colony Insurance Company ("Colony") [Doc. No. 20] and Defendants Chesapeake Energy Corporation and Chesapeake Operating, Inc. (collectively, "Chesapeake") [Doc. No. 22]. The Motions are fully briefed and at issue.

## **Background**

On January 26, 2013, Eduardo Garza, an employee of Nomac Drilling, L.L.C. ("Nomac"), was injured[1] at a well site owned and operated in part by Chesapeake. Mr. Garza sued Chesapeake and others for damages ("Underlying Lawsuit"),[2] and the case settled for a confidential amount. Colony paid a portion of the settlement[3] subject to an agreement with

---

[1] Mr. Garza's injury consisted of a single fracture to his left arm and was caused by a falling drill pipe mud screen.

[2] *Eduardo Garza v. Chesapeake Energy Corp., et al.*, Case No. 14-03-1222-DCV, filed March 27, 2014, in the 293rd District Court of Dimmit County, Texas.

[3] Colony claims to have "contributed $847,829.90 towards the settlement," which formed a portion of the settlement funds. Pl.'s Mot. [Doc. No. 20] at 3, n.5; *see also* Fine Aff. [Doc. No. 20-8] at 2, ¶ 5; Check No. 01512278 [Doc. No. 20-7].

Chesapeake that coverage issues would be litigated at a future time. Those coverage issues are the subject of the present litigation.

## Standard

Summary judgment is proper "if the movant shows there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that "might affect the outcome of the suit under governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is genuine if the evidence is such that a reasonable jury could return a verdict for either party. *Id.* at 255. When reviewing cross-motions for summary judgment, the Court must evaluate each motion on its own merits, with all inferences construed in favor of the party against whom the motion under consideration is made. *Pirkheim v. First Unum Life Ins.*, 229 F.3d 1008, 1010 (10th Cir. 2000). If a party who would bear the burden of proof at trial lacks evidence on an essential element of a claim, then all other factual issues concerning the claim become immaterial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The movant bears the initial burden of demonstrating the absence of a dispute of material fact warranting summary judgment. *Id.* at 322-23. If the movant carries this burden, the nonmovant must then go beyond the pleadings and "set forth specific facts" that would be admissible in evidence and that show a genuine issue for trial. *See Anderson*, 477 U.S. at 248; *Celotex*, 477 U.S. at 324; *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998). "To accomplish this, the facts must be identified by reference to affidavits, deposition

transcripts, or specific exhibits incorporated therein." *Adler*, 144 F.3d at 672. The Court's inquiry is whether the facts and evidence identified by the parties present "a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

**Statement of Undisputed Facts**

Colony issued two excess liability insurance policies to Chesapeake between 2012 and 2014. *See* Pl.'s Mot. [Doc. No. 20] at 5, ¶¶ 9(e)-(f); Defs.' Resp. [Doc. No. 25] at 10, ¶¶ (e)-(f). Effective July 1, 2012, to July 1, 2013, the first policy ("2012-2013 Policy") provided liability limits of $2,000,000 per occurrence, in excess of $1,000,000 of underlying limits. *Id.* ¶ 9(e). Effective July 1, 2013, to July 1, 2014, the second policy ("2013-2014 Policy") provided liability limits of $1,000,000 per occurrence, in excess of $2,000,000 of underlying limits. *Id.* ¶ 9(f). Pertinent to the present case, both the 2012-2013 Policy and the 2013-2014 Policy (collectively, "Policies") provided:

> I. INSURING AGREEMENT
>
> (A) *Indemnity*
>
> The COMPANY shall indemnify the INSURED for any and all sums which the INSURED shall become legally obligated to pay as ULTIMATE NET LOSS by reason of liability imposed upon the INSURED by law or liability assumed by the INSURED under CONTRACT, including the INSURED'S proportionate share of any liability arising in any manner whatsoever out of the operations or existence of any JOINT VENTURE in which the INSURED has an interest, for damages because of BODILY INJURY, PERSONAL INJURY or PROPERTY DAMAGE which is caused by an OCCURRENCE and either:

3

(1) for which a CLAIM is first made against the INSURED during the POLICY PERIOD or during any DISCOVERY PERIOD; or

(2) about which a NOTICE OF CIRCUMSTANCES is given to the COMPANY during the POLICY PERIOD or during any DISCOVERY PERIOD;

whichever is earlier.

\* \* \*

II. DEFINITIONS

(B) CLAIM: The term "CLAIM" shall mean any demand or suit against any INSURED for damages because of BODILY INJURY, PERSONAL INJURY or PROPERTY DAMAGE. Multiple demands or suits arising out of the same OCCURRENCE shall be deemed a single "CLAIM".

\* \* \*

(O) NOTICE OF CIRCUMSTANCES: The term "NOTICE OF CIRCUMSTANCES" shall mean written notice by the INSURED to the COMPANY of any OCCURRENCE or circumstances, which appear likely to give rise to a CLAIM against an INSURED. Such written notice shall include but not be limited to information as to the nature of any OCCURRENCE or circumstances, the actual or anticipated injury or damage resulting therefrom, the names of any claimant(s) or potential claimant(s), and the manner in which the INSURED first became aware of the OCCURRENCE or circumstances.

Policy No. AR6460514 [Doc. No. 20-2] at 6, 8.

On February 6, 2013, Chesapeake received a litigation hold letter ("Letter") from Gregory Herrman, counsel for Mr. Garza. *See* Pl.'s Mot. [Doc. No. 20] at 5, ¶ 9(c); Defs.'

4

Resp. [Doc. No. 25] at 9, ¶ (c). The Letter requested that Chesapeake preserve and maintain all potentially relevant records pertaining to Mr. Garza's injury, including communications with its insurance carrier, and further directed Chesapeake not to contact Mr. Garza directly. *See* Letter [Doc. No. 20-4]. Chesapeake gave a "Notice of Circumstances" to Colony regarding the Underlying Lawsuit on June 27, 2014.

**Analysis**

The issue currently before the Court is which of the two Policies is applicable to the Underlying Lawsuit,[4] and turns on the proper characterization of the Letter dated February 6, 2013. *See Berry v. St. Paul Fire & Marine Ins. Co.*, 70 F.3d 981, 982 (8th Cir. 1995). Chesapeake argues the Letter constitutes a claim and, therefore, the 2012-2013 Policy is applicable. Colony maintains the Letter does not meet the Policies' definition of a claim and, therefore, only the 2013-2014 Policy is implicated.

Because this case is brought pursuant to 28 U.S.C. § 1332(a)(1), Oklahoma law applies to the issue before the Court. *See Universal Underwriters Ins. Co. v. Winston*, 818 F.3d 1103, 1105-06 (10th Cir. 2016) (law of forum state applies in diversity actions) (citations omitted). Oklahoma's rules of construction and interpretation for insurance contracts are substantially identical to those for other contracts:

---

[4] Per a September 10, 2015 Order of the Court [Doc. No. 18], "discovery and adjudication in this case will take place in two phases. The first phase will be limited to the issue of which of the two Colony policies applies to the loss . . . ." *Id.* at 1. Accordingly, the Court declines to address Chesapeake's argument that, per a Master Service Agreement, Nomac, as Chesapeake's subsidiary, is the responsible party and, thus, should be the named defendant in this suit.

> An insurance policy is a contract. The rules of construction and analysis applicable to contracts govern equally insurance policies. The primary goal of contract interpretation is to determine and give effect to the intention of the parties at the time the contract was made. In arriving at the parties' intent, the terms of the instrument are to be given their plain and ordinary meaning. Where the language of a contract is clear and unambiguous on its face, that which stands expressed within its four corners must be given effect.

*May v. Mid-Century Ins. Co.*, 2006 OK 100, ¶ 22, 151 P.3d 132, 140 (citations omitted). However, where ambiguity exists, "a contract of insurance ordinarily must be construed liberally in favor of the insured and strictly against the insurer. . . ." *An-son Corp. v. Holland-America Ins. Co.*, 767 F.2d 700, 703 (10th Cir. 1985) (citations omitted).

The Court finds the Policies' language to be clear and unambiguous, requiring either an actual claim be made against an insured during the policy period, or an insured to provide Colony with a "Notice of Circumstances" during the policy period for coverage to be triggered. The Policies' language is congruent with what the Tenth Circuit has noted about claims made policies – that "allowing [a claim or] actual notice beyond the policy period would constitute an unbargained-for expansion of coverage, gratis, resulting in the insurance company's exposure to a risk substantially broader than that expressly insured against in the policy." *LaForge v. Am. Cas. Co. of Reading, Pa.*, 37 F.3d 580, 583-84 (10th Cir. 1994) (quotations and citations omitted).

Under the Policies, a "Notice of Circumstances" can be given regarding "any occurrence or circumstances . . . which appear likely to give rise to a claim against the

6

insured." Policy No. AR6460514 [Doc. No. 20-2] at 6. Although the insured is not required to provide a "Notice of Circumstances" to Colony unless the insured estimates a claim to "involve ULTIMATE NET LOSS in excess of fifty percent (50%) of the UNDERLYING LIMITS" (*Id.* at 41), or the claim involves one of certain enumerated injuries, the insured is certainly not prohibited from doing so. Further, the Policies' language suggests that a "Notice of Circumstances" would be proper any time it "appear[s] likely" that a claim is forthcoming. Here, even though Chesapeake maintains that a claim was made via the Letter in February 2013, it waited until June 2014 to provide Colony with a "Notice of Circumstances." Such notice was outside the 2012-2013 Policy period, and therefore, fails to trigger the 2012-2013 Policy. Accordingly, the Court must now examine whether a claim was made during the 2012-2013 Policy period.

Generally, "a 'claim' is an assertion by a third party that . . . the insured may be liable to it for damages . . . ." Couch on Insurance § 191.10 (3d ed. 2000); *see also* 20 Eric Mills Holmes, Holmes' Appleman on Insurance § 130.2 (2d ed. 2002) ("Generally speaking, a 'claim' in a liability policy is considered to be an assertion by a third-party to the effect that the insured has caused the claimant damages through some acts or omissions and that the claimant intends to hold the insured responsible for all or a portion of the damages so caused."). Here, per the Policies' language, a "claim" specifically requires that either a demand be made or suit be filed. *See* Policies, § II(B). The Underlying Lawsuit does not qualify as a claim made during the 2012-2013 Policy period because it was filed in 2014.

7

Therefore, the Letter must constitute a "demand" if the 2012-2013 Policy is to be implicated. The Court declines to construe it as such.

The Policies do not define "demand." Although courts will not undertake to rewrite the terms of a policy (*see Phillips v. Estate of Greenfield*, 859 P.2d 1101 (Okla. 1993)), in the absence of an insurer-provided definition, the "terms of an insurance policy . . . must be construed according to their plain, ordinary and accepted sense in the common speech of men, unless it affirmatively appears from the policy that a different meaning was intended." *Webb v. Allstate Life Ins. Co.*, 536 F.2d 336, 339 (10th Cir. 1976); *see also Dodson v. St. Paul Ins. Co.*, 1991 OK 24, 812 P.2d 372, 376 ("The terms of the parties' contract, if unambiguous, clear, and consistent, are accepted in their plain and ordinary sense."). Accordingly, as defined by Merriam-Webster, a "demand" is: 1(a) "an act of demanding or asking especially with authority," or 1(b) "something claimed as due." *Merriam-Webster Online Dictionary*. 2004. http://www.merriam-webster.com (22 Sept. 2016).

In support of its position that the Letter constitutes a demand, Chesapeake primarily relies on the Eighth Circuit's reasoning in *Berry* wherein the court construed a letter from an injured party's counsel to a corporate manufacturer as "sufficiently demanding in tone and substance to qualify as a 'claim' within the meaning of the policy." *Berry*, 70 F.3d at 983.[5] There the court reasoned that although "[t]he letter does not state damages of a particular

---

[5] The policy in *Berry* defined a "claim" as a "demand in which damages are alleged." *Id.* at 982.

8

dollar amount, . . . the inference that Mr. Berry's injuries and disabilities should be compensated in money is unmistakable." *Id.* at 982. The court continued:

> The letter is telling [the manufacturer] that Mr. Berry has a claim, that the claim is [the manufacturer]'s responsibility, and that the claim should be referred to [the manufacturer's] insurance company. Further, the reference to an attorney's lien presupposes the existence of a claim, because it is a claim to which the lien attaches under state law.

*Id.* The Court agrees with Colony that the Letter here is distinguishable from the notice letter in *Berry*.

Here, the Letter has a clear two-fold intent: (1) to notify Chesapeake that Mr. Garza is now represented by counsel and that all communications intended for him should be made through his attorney, and (2) to request preservation of relevant records pertaining to Mr. Garza's accident. The Letter makes no allegations against Chesapeake, nor does it request Chesapeake put its insurer on notice. Furthermore, the Letter contains no demand for damages against Chesapeake or anyone else, makes no mention of an attorney's lien or a claim to which one would attach, nor does it advise Chesapeake that a suit against it is imminent. At most, it communicates to Chesapeake a duty to preserve documents in connection with potential litigation against an unnamed party.[6]

Further, assuming Chesapeake did consider the Letter a demand, it failed to take any steps in accordance with that belief to notify Colony once the Letter was received.

---

[6] The duty to preserve and produce documents can extend to non-parties. *See* Fed. R. Civ. P. 34(c).

Therefore, the Court is left to look solely to the Letter's language for insight. Because the language of the Letter alone does not lend itself to an interpretation construing it as a claim, the Court declines to do so.

Accordingly, the Court finds that coverage under the 2012-2013 Policy was not triggered in connection with the Underlying Lawsuit. Further, because the 2013-2014 Policy's coverage only applies after $2,000,000 of underlying limits has been exhausted, the Court finds that coverage regarding the 2013-2014 Policy is not at issue, as the underlying loss and expenses did not exceed Chesapeake's $2,000,000 self-insured retention. *See* Defs.' Resp. [Doc. No. 25] at 2.[7]

## Conclusion

For these reasons, the Court finds that there is no genuine issue of fact regarding which policy is implicated, and Colony is entitled to judgment as a matter of law. Therefore, the Court GRANTS Plaintiff's Motion for Summary Judgment [Doc. No. 20] as set forth herein and DENIES Defendants' Motion for Summary Judgment [Doc. No. 22].

IT IS SO ORDERED this 28th day of September, 2016.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE

---

[7] Pursuant to the Court's Order entered on September 10, 2015 [Doc. No. 18], the parties are directed to jointly notify the Court within 14 days of any remaining issues, and to propose a schedule to control the proceedings going forward.